UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **CALVIN BETHLEY** | **NO. 08-0182-JJB-RLB** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 6, 2013.

                **RICHARD L. BOURGEOIS, JR.**
                **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| CALVIN BETHLEY | NO. 08-0182-JJB-RLB |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the motion of the defendant, Calvin Bethley, to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. In this motion, the defendant asserts that he was provided with ineffective assistance of counsel during the sentencing phase of his criminal proceedings and that the sentencing Court erred in its application of the United States Sentencing Guidelines ("USSG"). The Government has filed an opposition to the defendant's motion. There is no need for oral argument or for an evidentiary hearing.

On December 4, 2008, a Criminal Complaint and Arrest Warrant were lodged against the defendant, charging him with escape from an institution or facility to which he had been ordered confined by direction of the United States Attorney General, a violation of 18 U.S.C. § 751(a). Upon the defendant's subsequent arrest, he was charged by Grand Jury Indictment on December 18, 2008, with having committed the above-referenced offense by failing to report or return to the Ecumenical House, a community corrections facility to which he had been ordered to report in Baton Rouge, Louisiana. On February 11, 2009, the defendant withdrew his prior plea of not guilty and entered a plea of guilty in connection with the offense charged against him.

At the defendant's re-arraignment and guilty plea colloquy, conducted on February 11, 2009, the defendant testified in open court that he had received a copy of the indictment, had reviewed the charge with his attorney, and that he understood same. See rec.doc.no. 24 at pp. 4-5. The defendant further testified that he had no objection to the legal representation that had been provided to him. Id. at p. 5. The trial judge then explained the nature of the charge levied against the defendant and explained the rights which the defendant was giving up by entering the plea, including inter alia the right to a trial before a jury of his peers, to the assistance of counsel, to the presumption of innocence, to compel the government to establish his guilt beyond a reasonable doubt, to confront and cross-examine the witnesses against him, to offer witnesses and evidence on his own behalf, and to either testify at trial or remain silent without any adverse inference. Id. at pp. 5-7. Consistent with Rule 11 of the Federal Rules of Criminal Procedure, the trial judge went on to explain to the defendant the maximum punishment that he could receive. Id. at p. 8-9. Specifically, the judge informed the defendant that he faced a prison term of up to five (5) years, a potential fine of up to $ 250,000.00, potential restitution to any victims, a mandatory special assessment in the amount of $ 100.00, and a period of post-custody supervised release of not more than three (3) years. The Court further expressly informed the defendant that the Court was obligated to take the federal sentencing guidelines into consideration in arriving at an appropriate sentence but was not obligated to follow same and could in fact depart from the guidelines and impose a sentence either more or less severe. Id. at p. 9. The defendant affirmatively signified that no promises had been made with regard to the ultimate sentence he might receive, and that no one had threatened or forced him to plead guilty. Id. at p. 10. Finally, the trial judge advised the defendant that the Court would defer sentencing

until after the preparation and dissemination of a Presentence Investigation Report ("PSR") and that any assurances which the defendant may have received from any person regarding the sentence he might receive could not be relied upon because the Court had not yet determined what the sentence would be and would not do so until after review of the PSR and any objections thereto. Id. at p. 10-11. The defendant signified that he understood and acquiesced in all that the Court had stated.

Finally, the factual predicate for the defendant's plea was read into the record. This factual statement recited that:

> On or about September 6th, 1996, the defendant, Calvin L. Bethely [sic], was committed to the custody of the United States bureau of Prisons, B.O.P., to be imprisoned for a term of 188 months, having been convicted of wire fraud and money laundering in violation of federal law in the United States District Court for the Middle District of Louisiana.
>
> On August 7th, 2008, the B.O.P. granted the defendant a transfer to the Community Corrections Center, also known as the "Ecumenical House," located in Baton Rouge, Louisiana.
>
> On or about October 7th, 2008, the Ecumenical House allowed the defendant to transfer to its home confinement program.
>
> While in the home confinement program, the defendant was restricted to his approved residence, his approved place of employment, and the Ecumenical House. The defendant was instructed that he was required to report to the Ecumenical House whenever directed. The defendant acknowledged that he understood these conditions.
>
> At all relevant times, the defendant remained in lawful federal custody and was confined by direction of the Attorney General as a result of his federal conviction.
>
> On or about December 2, 2008, the Ecumenical House made contact with the defendant and ordered him to report to the Ecumenical House that day, based on a police report indicating that the defendant had been involved in a physical altercation with a female acquaintance a few days earlier. The defendant did not return to the Ecumenical House, as ordered. The United States Marshal's Office became involved and also made telephonic contact with the defendant.

> In one call, the defendant told officers that he was at his residence but when officers entered the residence, the defendant was not inside.
>
> In a subsequent call, the defendant told officers that he would not surrender. The defendant knew that he had departed federal custody without permission.
>
> On December 3, 2008, the United States Bureau of Prisons formally declared the defendant an escapee and placed him on escape status. Law enforcement agents continued working to locate the defendant and were unsuccessful.
>
> The defendant was not taken back into custody until on or about December 9, 2008 when he was apprehended at a hotel in Baton Rouge where agents had established surveillance.

Id. at pp. 12-13. The defendant agreed that this factual statement was substantially correct and signified his wish to plead guilty to the charge levied against him. Id. at pp. 14-15. Based upon this recitation, the Court accepted the defendant's guilty plea and deferred the matter for preparation of a PSR.

A PSR was thereafter made available to the parties on June 9, 2009. See rec.doc.no. 14. The PSR calculated the defendant's Base Offense Level to be thirteen (13). Four (4) points were deducted from the Base Offense Level based upon USSG § 2P1.1(b)(3), which provides for such reduction if the defendant has escaped from a non-secure facility. An additional two (2) points were deducted based upon the defendant's acceptance of responsibility for commission of the offense under USSG § 3E1.1(a). The PSR ultimately recommended a final Total Offense Level for the defendant of seven (7) which, with a Criminal History Category calculated at IV, resulted in a sentencing guideline range of between eight (8) and fourteen (14) months in confinement. Neither the Government nor the defendant filed any objections to the PSR.

At the sentencing hearing thereafter conducted on September 18, 2009, the Court adopted the findings of fact and the calculation of the guidelines sentencing range contained in the PSR.

See rec.doc.no. 28 at p. 3. However, the Court notified the defendant that the Court had decided to depart upward, based upon a conclusion that the defendant's Criminal History Category did not accurately reflect, and in fact substantially under-represented, the seriousness of the defendant's past criminal conduct, id. at p. 5, particularly in light of the fact that the defendant had exhibited a pattern of criminal behavior spanning over thirty years, with numerous arrests "for theft, using various schemes, simple battery, which involved domestic violence, drug charges, [and] more theft charges." Id. at p. 4. In addition, the Court noted that the defendant had a total of eight (8) felony convictions (not counting the instant charge) and had a pending assault charge in state court, that every time the defendant had completed a criminal sentence, he had "returned to the same conduct that got [him] in trouble in the first place," and that many of his prior convictions had not been counted in the calculation of his Criminal History Category because of the passage of time since the respective convictions. Id.[1]

In apprising the defendant of the manner employed by the Court in arriving at the ultimate sentence, the Court advised the defendant that it had first considered a departure upward two (2) levels in the defendant's Criminal History Category to level VI, the highest level possible under the Guidelines. Id. at p. 5. The Court next advised the defendant that even with a

---

1. Although the sentencing judge did not make reference to USSG § 4A1.3(a), which authorizes an upward departure when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes," the judge's reliance upon this section of the Sentencing Guidelines was implicit. See United States v. Davila-Martinez, 464 Fed.Appx. 247 (5th Cir. 2012) (upholding a sentence which resulted from an upward departure in Criminal History Category from IV to VI and an upward departure in Offense Level from level ten (10) to seventeen (17)). In that case, although the sentencing judge had not made any reference to USSG § 4A1.3(a), the appellate court found that the application of that section was implicit from the reasons stated at the sentencing hearing.

Criminal History Category of VI, the Guidelines range still under-represented the seriousness of the defendant's past criminal conduct. Id. As a result, the Court concluded that an additional "increase in the Offense Level would more accurately and realistically reflect the quantity and quality of the criminal conduct that [the defendant had] engaged in, and continue[d] to engage in." Id. Accordingly, the Court proceeded to a re-evaluation of the defendant's Offense Level and determined that a ten-level increase, from seven (7) to seventeen (17), together with the referenced upward departure in Criminal History Category to VI, would be "adequate to address the seriousness of [the defendant's] criminal history." Id. at p. 6. Undertaking this new calculation, the Court concluded that the defendant faced a Guidelines Range of between 51 and 63 months in confinement, and the Court then sentenced the defendant to the maximum sentence for the charged offense of 60 months in confinement, to be served consecutively to any previous state or federal sentence(s), together with three (3) years of supervised confinement and a special monetary assessment of $100.00. Id. at pp. 6-7.

On September 22, 2009, the defendant filed a Notice of Appeal and, on January 14, 2010, the United States Court of Appeals for the Fifth Circuit issued its Mandate, affirming the judgment of the District Court. See United States v. Bethley, 405 Fed. Appx. 908 (5th Cir. 2010). In doing so, the Fifth Circuit noted that the sentencing court had "provided individualized, case-specific reasons" for imposing the upward departure. In addition, on April 25, 2011, the United States Supreme Court thereafter denied the defendant's application for a writ of certiorari. See Bethley v. United States, ___ U.S. ___, 131 S.Ct. 2172 (2011).

On April 23, 2012, the defendant filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.[2] The defendant asserts (1) that he was provided with ineffective assistance of counsel when his trial attorney failed to object and/or argue at the sentencing hearing that the Court's methodology in calculating the sentence failed to give effect to the defendant's acceptance of responsibility, (2) that the Court utilized an improper methodology in calculating the sentence, which methodology failed to give effect to the defendant's acceptance of responsibility, and (3) that the Court should have applied the defendant's two-level reduction for acceptance of responsibility <u>after</u> its calculation of a sentencing range justifying the imposition of the highest possible sentence rather than before, and that the Court's failure to do so was without foundation and amounted to a wrongful refusal to grant the defendant the benefit of his acceptance of responsibility.

<u>Legal Analysis</u>

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982). When a defendant has been convicted, and his appellate rights have been exhausted or waived, there is a presumption that his conviction is fair and final. <u>United States v. Cervantes</u>, 132 F.3d 1106, 1109 (5th Cir. 1998). "As a result, review of convictions under § 2255 ordinarily is limited to questions of constitutional or jurisdictional

---

2. Although the defendant's pro se motion was docketed as filed in this Court on April 26, 2012, the Court will apply the "mailbox rule" articulated in <u>Houston v. Lack</u>, 487 U.S. 266, 271 (1988), pursuant to which an inmate petitioner is deemed to have filed a habeas corpus pleading on the date that he places it in the prison mailing system, and not on the date that it is ultimately received and docketed by the Court. Accordingly, inasmuch as the defendant signed the instant motion on April 23, 2012, the Court will utilize that date as the date of the defendant's filing.

magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." Id. This procedural bar does not apply, however, to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. See Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal). As a general rule, a valid guilty plea waives all non-jurisdictional defects, including any ineffective-assistance-of-counsel claims, unless the ineffective-assistance claims affected the voluntariness of the plea. Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1993), cert. denied, 466 U.S. 906 (1984).

In the instant case, the record clearly establishes that the defendant's plea was voluntary and intelligent and was not itself the product of any alleged ineffective assistance of counsel or deficiency in the plea colloquy. Nor does the defendant contend otherwise. As discussed above, the transcript of the defendant's plea colloquy reflects that he was advised, among other things, of the charge against him, of the statutory maximum term of imprisonment which he faced, of the rights which he was giving up by entering into the plea, and of the Court's obligation to take into account (but not necessarily to follow) the United States Sentencing Guidelines. The defendant signified that he had received a copy of the Indictment and reviewed the charge with his attorney, that he was satisfied with the representation provided by his attorney, and that he had not relied upon any promises, inducements, intimidation or coercion, in deciding to enter the plea.

Notwithstanding the foregoing, the defendant contends in his first asserted ground for relief that he was provided with ineffective assistance of counsel because his attorney failed to

object and/or argue at the sentencing hearing that the Court was applying an improper methodology in arriving at the sentence. Specifically, the defendant asserts that the Court should have applied his two-level reduction in the Offense Level – for acceptance of responsibility under USSG § 3E1.1 – only <u>after</u> departing upward and arriving at an Offense Level of seventeen (17). Had the Court done so, according to the defendant, the resulting Offense Level would have been only fifteen (15), which would have supported the imposition of a sentence less severe than the maximum 60 months in confinement. The defendant asserts that, by applying the two-level reduction in his Offense Level <u>before</u> departing upward, and by then departing upward to an Offense Level which resulted in a sentencing range supporting the maximum sentence, the Court gave no effect to the defendant's acceptance of responsibility. The defendant further argues that, had his attorney simply pointed this out at the sentencing hearing or asked for reconsideration, "with possibly a simple request," the sentence "may have been different in the form of a sentence two points lower than the statutory maximum."

A habeas defendant who claims ineffective assistance of counsel must affirmatively demonstrate:

(1) That his counsel's performance was "deficient", <u>i.e.</u>, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2) That the deficient performance prejudiced his defense, <u>i.e.</u>, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The defendant must make both showings in order to obtain habeas relief based upon alleged ineffective assistance of counsel. <u>Id.</u>

9

To satisfy the deficiency prong of the Strickland standard, the defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. See, e.g., Martin v. McCotter, 796 F.2d 813, 816 (5th Cir. 1986), cert. denied, 479 U.S. 1057 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. Martin v. McCotter, supra, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. Bridge v. Lynauch, supra, 838 F.2d at 773; Martin v. McCotter, supra, 796 F.2d at 816.

If the defendant satisfies the first prong of the Strickland test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. Earvin v. Lynaugh, 860 F.2d 623, 627 (5th Cir. 1988), cert. denied, 489 U.S. 1091 (1989). To satisfy the prejudice prong of the Strickland test, it is not sufficient for the defendant to show that the alleged errors had some conceivable effect on the outcome of the proceeding. Strickland v. Washington, supra, 466 U.S. at 693. Rather, the defendant must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Martin v. McCotter, supra, 796 F.2d at 816. The habeas defendant need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." Id. at 816-17.

The above showing is one that the defendant cannot meet in the instant case. The United States Sentencing Commission's Guidelines Manual specifically sets forth the order in which a sentencing court is directed to apply the Sentencing Guidelines in arriving at an appropriate sentence. Specifically, at the time of the defendant's sentencing hearing in this case, USSG § 1B1.1 provided that, "[e]xcept as specifically directed, the provisions of this Manual are to be applied in the ... order" stated.[3] See also United States v. Cashaw, 625 F.3d 271 (5th Cir. 2010) ("The district court determines a defendant's sentence under the Guidelines by following, step-by-step, the sequence laid out in the 'Application Instructions'"); United States v. Wood, 48 F.3d

---

3. As pertinent hereto, USSG § 1B1.1 provided, at the time of the defendant's sentencing hearing:

Except as specifically directed, the provisions of this Manual are to be applied <u>in the following order</u>:

    (a) Determine ... the offense guideline section ... applicable to the offense of conviction.

    (b) Determine the base offense level and apply any appropriate specific offense characteristics ....

    (c) Apply the adjustments as appropriate related to the victim, role, and obstruction of justice ....

    (d) If there are multiple counts of conviction, repeat steps (1) through (3) for each count ....

    (e) Apply the adjustment as appropriate for the defendant's acceptance of responsibility from ... Chapter Three ....

    (f) Determine the defendant's criminal history category as specified in ... Chapter Four ....

    (g) Determine the guideline range ... that corresponds to the offense level and criminal history category determined above.

530 (5th Cir. 1995) (addressing "the order in which a sentence must be calculated ... under the Application Instructions of section 1B1.1"(emphasis added)); United States v. Reyes, 881 F.2d 155 (5th Cir. 1989) ("Section 1B1.1 of the Sentencing Guidelines maps out the manner in which a sentencing court should apply the Guideline provisions").  Pursuant to this "mandated" sequence provided in USSG § 1B1.1, United States v. Cashaw, supra, 625 F.3d at 274, the adjustment in the instant case for the defendant's acceptance of responsibility under Chapter Three of the Sentencing Guidelines (USSC § 3E1.1) was clearly directed to come sequentially before the calculation of the defendant's Criminal History Category under Chapter Four.  Specifically, § 1B1.1 provides, in sequence, that a sentencing court "[a]ppl[ies] the adjustment as appropriate for the defendant's acceptance of responsibility from ... Chapter Three" and next "[d]etermine[s] the defendant's criminal history category as specified in ... Chapter Four."  As further elucidated by the Fifth Circuit in United States v. Cashaw, supra:

> [U]nder § 1B1.1, the district court first determines the applicable Guideline section and base offense level.  Next, it applies any appropriate upward or downward adjustments from Chapter Three of the Guidelines.... [A]cceptance of responsibility adjustments are found in Chapter Three.  After Chapter Three adjustments, the district court then determines criminal history category and "other applicable adjustments" from Chapter Four....  A defendant's sentencing range is based on the final offense level and criminal history category after these adjustments are applied to the base level in sequence.

Id. 273-74 (citations omitted).  See also United States v. Reyes, supra, 881 F.2d at 156 ("The court first determines the base offense level under Chapter Two....  The court may also adjust the offense level to reflect the defendant's acceptance of responsibility [under Chapter Three]....  The court next determines the defendant's criminal history category and any other applicable adjustments under ... Chapter Four"); United States v. Powell, 303 Fed. Appx. 138, 140 (4th Cir. 2008) ("Application of the appropriate adjustment for acceptance of responsibility occurs prior

to any consideration of departures"); United States v. Flinn, 18 F.3d 826, 831 (10th Cir. 1994) (finding that "an adjustment for acceptance of responsibility is applied before upward departure is considered").

In the Court's view, the sequential order imposed by USSG § 1B1.1, together with the above-cited interpretive jurisprudence, foreclose any viable argument that the defendant's attorney was ineffective for failing to contest the Court's methodology in arriving at the defendant's sentence. After applying the deduction under Chapter Three of the Sentencing guidelines for the defendant's acceptance of responsibility and in thereafter determining the defendant's appropriate Criminal History Category under Chapter Four, the Court was explicitly authorized to impose an upward departure where, as determined by the Court in this case, "reliable information indicate[d] that the defendant's criminal history category substantially under-represent[ed] the seriousness of the defendant's criminal history or the likelihood that the defendant [would] commit other crimes." See USSG § 4A1.3(a). Accordingly, any objection or argument put forth by the defendant's attorney relative to the methodology employed by the Court would have been rejected, and inasmuch as it is not deficient performance for an attorney to fail to assert a non-meritorious argument, see, e.g., Clark v. Collins, 19 F.3d 959, 966 (5th Cir.), cert. denied, 513 U.S. 966 (1994), the defendant's contention relative to the ineffectiveness of his attorney must be rejected.[4]

Turning to the defendant's remaining two grounds for relief, these claims present essentially the same argument, although not couched in terms of ineffective assistance of

---

4. The Court further notes that the defendant's attorney did in fact object at the sentencing hearing to the upward departure in the defendant's sentence. See rec.doc.no. 28 at p. 7.

13

counsel. Specifically, the defendant contends that the sentencing court in fact utilized an improper methodology in calculating the defendant's sentence and that this methodology failed to give effect to the defendant's acceptance of responsibility, thereby effectively amounting to a wrongful refusal to grant the defendant the benefit of such acceptance.

The defendant's claims in this respect should be rejected. Initially, to the extent that the defendant's motion may be interpreted as asserting claims akin to those presented on direct appeal, where he "challenge[d] the district court's decision to depart upwardly to 60 months, pursuant to U.S.S.G. § 4A1.3," a consideration of these claims is foreclosed by the well-settled rule that "issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." United States v. Kalish, 780 F.2d 506, 508 (5th Cir.), cert. denied, 476 U.S. 1118 (1986). Further, to the extent that these claims are newly presented in this proceeding, they are not properly before the Court in any event. As pointed out by the Government, "[r]elief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Towe, 26 F.3d 614, 615 (5th Cir. 1994). "Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." Id. In the instant case, there is nothing which prevented the defendant from presenting the instant claims on direct appeal. Moreover, pursuant to well-established Fifth Circuit precedent, the mere technical application of the Sentencing Guidelines does not give rise to a constitutional issue cognizable under § 2255. United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994); United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "A district court's calculation under or application of the sentencing

14

guidelines standing alone is not the type of error cognizable under section 2255." United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995), cert. denied, 516 U.S. 1165 (1996). Accordingly, in light of the defendant's failure to assert these nonconstitutional claims on direct appeal, the defendant's claims relative to the Court's methodology in applying the Sentencing Guidelines should be denied. See id.

Finally, in the alternative, this Court finds that the sentencing judge in fact utilized a correct methodology in arriving at the defendant's sentence in the instant case. Consistent with USSG § 1B1.1, the Court applied the defendant's two-level reduction in Offense Level for acceptance of responsibility under Chapter Three of the Sentencing Guidelines before sequentially seeking to determine the defendant's appropriate Criminal History Category under Chapter Four thereof. The Court then implicitly applied USSG § 4A1.3(a) which provides that, "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." Finally, after considering an upward departure in the defendant's Criminal History Category from Level IV to Level VI, the Court implicitly undertook the exercise authorized by USSG § 4A1.1(a)(4)(B), which provides that, "[i]n a case in which the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." This methodology has been approved by the United States Court of Appeals for the Fifth Circuit. See United States v. Niehenke, 47 F.3d

424, 1995 WL 71027 (5th Cir. Jan. 24, 1995). In Niehenke, a case presenting a situation strikingly similar to this one, a PSR was prepared which, as here, calculated the defendant's sentence, after entry of a guilty plea and after a two-level reduction for acceptance of responsibility, and arrived at an Offense Level of seven (7) and a Criminal History Category of IV. In that case, also as here, the sentencing court departed upward to a Criminal History Category of VI and, upon concluding that the Guidelines still under-represented the seriousness of the defendant's criminal history and the likelihood of recidivism, applied USSG § 4A1.3 to increase the defendant's Offense Level from seven (7) to seventeen (17) and imposed a maximum 60-month sentence. On direct appeal, this sentence was affirmed upon a finding that "the district court followed the correct procedure in departing upward under § 4A1.3":

> After determining that the applicable guideline sentencing range did not adequately reflect [the defendant's] criminal history and recidivism, the district court increased his criminal history category to VI, then increased his offense level to reflect a sentence range within the statutory limit for his offense deemed appropriate by the court. This procedure is commensurate with that anticipated in § 4A1.3.

Id. at *2.[5] In the instant case, the sentencing court applied the same methodology, and the defendant's sentence has been affirmed on appeal, upon a finding that the sentencing court

---

5. The defendant also suggests that, by applying the two-level reduction for acceptance of responsibility under USSG § 3E1.1 before consideration of any upward departure under USSG § 4A1.2, and by thereafter upwardly departing to a sentencing range which supported imposition of the maximum possible sentence, the sentencing Court has thwarted the intent of the Sentencing Guidelines because the defendant has obtained no benefit from his acceptance of responsibility. This contention is not persuasive. A somewhat similar argument was made in United States v. Reyes, supra, 881 F.2d at 157, and the Court there found that, upon arrival at a final sentencing range, "the district court retains, at least marginally, the ability to reflect the defendant's acceptance of responsibility in the sentence imposed," notably through the determination of a sentence at the "high end" or "low end" of the resulting range. Further, this Court notes that in United States v. Niehenke, supra, the Fifth Circuit expressed no concern that, through the methodology employed in the instant case, the defendant failed to obtain the benefit of a two-level reduction in his Offense Level for acceptance of responsibility.

"provided individualized, case-specific reasons for imposing the sentence." See United States v. Bethley, supra, 405 Fed. Appx. at 909. Accordingly, there is no basis for the defendant's contentions in this case.

## RECOMMENDATION

It is recommended that the defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, rec.doc.no. 37, be denied.

Signed in Baton Rouge, Louisiana, on September 6, 2013.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**